1  UNITED STATES DISTRICT COURT
2  DISTRICT OF PUERTO RICO

3  CARLOS SUAREZ-GALARZA,

4      Petitioner,

                                   Civil No. 11-2037 (JAF)

5      v.

                          (Crim. No. 09-405)

6  UNITED STATES OF AMERICA,

7      Respondent.

8  **<u>OPINION AND ORDER</u>**

9      Petitioner, Carlos Suárez-Galarza, brings this pro-se petition for relief from a federal

10  court conviction pursuant to 28 U.S.C. § 2255.  (Docket No. 1.)  Respondent, the United States

11  of America, opposes (Docket No. 3), and Petitioner responds (Docket No. 4).

12  **I.**

13  **<u>Factual and Procedural History</u>**

14      We draw the following narrative from Petitioner's motions, the Government's response,

15  and the docket of the related criminal case.  On May 19, 2010, Petitioner pleaded guilty to one

16  count of possession with intent to distribute at least thirty-five, but less than fifty, grams of

17  cocaine base ("crack") in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).  (Crim. No. 09-

18  405, Docket No. 189 at 2.)  He also pleaded guilty to the knowing possession of a firearm in

19  furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A).  (<u>Id.</u>)

20  In exchange, the government agreed to dismiss the counts remaining against him in the

21  superseding indictment and to recommend a total sentence of 144 months, with eighty-four

22  months for the first count and the statutory minimum of sixty months for the second count.  (<u>Id.</u>

at 7.)  On September 13, 2010, this court sentenced Petitioner to 120 months' imprisonment (sixty months for each count), and a supervised release term of five years.  (Id., Docket No. 262.)  Petitioner did not file a direct appeal. (Docket No. 3 at 2–3.)  Petitioner submitted the present petition seeking § 2255 relief dated September 26, 2011. (Docket No. 1.)

## II.

## Standard for Relief Under 28 U.S.C. § 2255

A federal district court has jurisdiction to entertain a § 2255 petition when the petitioner is in custody under the sentence of a federal court.  See 28 U.S.C. § 2255.  A federal prisoner may challenge his or her sentence on the ground that, inter alia, it "was imposed in violation of the Constitution or laws of the United States."  Id.  The petitioner is entitled to an evidentiary hearing unless the "allegations, accepted as true, would not entitle the petitioner to relief, or . . . 'are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'"  United States v. Rodríguez Rodríguez, 929 F.2d 747, 749-50 (1st Cir. 1991) (quoting Dziurgot v. Luther, 897 F.2d 1222, 1225 (1st Cir. 1990)); see 28 U.S.C. § 2255(b).

## III.

## Analysis

Because Petitioner appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Nevertheless, Petitioner's pro-se status does not excuse him from complying with procedural and substantive law.  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  Petitioner argues that: 1) he suffered from ineffective assistance of counsel in signing the plea agreement; 2) we should reduce his sentence under the Fairness in Sentencing Act; and 3) we should reduce his

1    sentence under 18 U.S.C. § 3582.  We discuss each claim in turn below and find them to lack

2    merit.

3    **A.    Ineffective Assistance of Counsel: The Plea Agreement**

4        The Sixth Amendment "right to counsel is the right to the effective assistance of

5    counsel."  Strickland v. Washington, 466 U.S. 668, 686 (1984) (internal quotation marks

6    omitted); see U.S. Const. amend. VI.  To prevail on a claim of ineffective assistance of counsel,

7    Petitioner must show not only a deficient performance by trial counsel, "but also that the

8    deficient performance prejudiced the defense and deprived the defendant of a fair trial."  United

9    States v. Manon, 608 F. 3d 126, 131 (1st Cir. 2010) (quoting Strickland, 466 U.S. at 687).

10       Petitioner may satisfy the deficient-performance prong by showing that the trial counsel's

11   representation "fell below an objective standard of reasonableness," a standard that is informed

12   by "prevailing professional norms."  Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010)

13   (quoting Strickland, 466 U.S. at 688).  "The prejudice factor requires the defendant to 'show

14   that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

15   the proceeding would have been different.'"  Manon, 608 F. 3d at 131–32. (quoting Strickland,

16   466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence

17   in the outcome."  Strickland, 466 U.S. at 694.

18       Petitioner argues that his counsel made "false promises" regarding the nature of the plea

19   agreement. (Docket No. 1 at 3.)  Specifically, he claims that trial counsel led him to believe that

20   the recommended sentence would total eighty-four months, as opposed to the actual

21   recommended sentence of 144 months (eighty-four months for count one plus sixty months for

22   count two).  (Id. at 5.)  Petitioner further argues that his counsel failed to properly advise him

Civil No. 10-1696 (JAF)                                                                                    -4-

1    of the maximum sentence he could receive, and that counsel represented that the firearms count

2    would not add a consecutive sentence.  (Id. at 6.)  Petitioner also claims his trial counsel

3    "induced" him to plead guilty "in order to avoid a sentence of 30 years" by "inducing with false

4    promises to accept conditions that were not real and outside the scope of the plea agreement."

5    (Id. at 2, 6.)  The bulk of his habeas petition centers on crack re-sentencing arguments, but

6    similarly-worded skimpy allegations of ineffective assistance can be found sprinkled throughout

7    the brief.  Petitioner offers no further elaboration of his ineffective assistance claim.  Nor does

8    he claim that, but for trial counsel's conduct, he would have gone to trial or withdrawn his

9    plea—instead he merely states that but for counsel's performance, the outcome of the

10   proceedings "would have been different."  (Docket No. 4 at 8.)

11        Unfortunately, conclusory claims and a "different" outcome cannot satisfy the prejudice

12   prong of the ineffective assistance test, and Petitioner has failed "to establish that but for

13   [counsel's] conduct, [he] would have foregone a guilty plea and run the gauntlet of trial."

14   Moreno-Espada v. United States, 666 F.3d 60, 66 (1st Cir. 2012).  In Moreno-Espada, the First

15   Circuit rejected a similar ineffective assistance claim from a habeas petitioner, who claimed that

16   his counsel failed to advise him that "a guilty plea could result in a sentence within a range of

17   108 to 135 months imprisonment instead of the 87 to 108 months reflected in his plea

18   agreement."  Id. at 64.  The court found that Moreno's claims failed to satisfy the prejudice

19   prong, noting first that "failure to properly calculate [a defendant's] sentence exposure, by itself,

20   does not amount to prejudice," Id. at 65 (citing United States v. LaBonte, 70 F.3d 1396, 1413

21   (1st Cir. 1995)).

1    Like the defendant in <u>Moreno</u>, Petitioner has filed no "sworn statements or affidavits to

2    support his contention," and (unlike Moreno) he has not even stated that he "would have sought

3    trial, and has instead buttressed his case on groundless affirmations . . . . [S]uch self-serving

4    statements unaccompanied by either a claim of innocence or the articulation of any plausible

5    defense that could have been raised had a defendant opted for a trial, are insufficient to

6    demonstrate the required prejudice." <u>Id.</u> at 66–67 (internal quotation marks and citations

7    omitted). And, thus, like the <u>Moreno-Espada</u> court, we reject Petitioner's conclusory claims for

8    their failure to demonstrate prejudice. <u>See</u> <u>Id.</u> at 66 (explaining that district court may dismiss

9    § 2255 petition without evidentiary hearing "if it plainly appears on the face of the pleadings

10   that the petitioner is not entitled to the requested relief, or if the allegations . . . consist of no

11   more than conclusory prognostications and perfervid rhetoric" (quoting <u>LaBonte</u>, 70 F.3d at

12   1412–13)).

13   Furthermore, if Petitioner means to raise further arguments through his list of the

14   holdings of various ineffective assistance cases, we cannot decipher them. He does not directly

15   make any further claims or mentions the facts related to his own case, and we go no further. <u>See</u>

16   <u>Cody v. United States</u>, 249 F.3d 47, 53 n.6 (1st Cir. 2001) (ineffective assistance claim raised

17   in a perfunctory manner in § 2255 proceeding deemed waived).

18   **B.    <u>The Fair Sentencing Act</u>**

19   Petitioner argues that his sentence should be reduced under the Fair Sentencing Act of

20   2010, Pub. L. No. 111-220, 124 Stat. 2372 (the "FSA"), which took steps to reduce the

21   sentencing disparity between crack and powder cocaine offenses. The FSA, effective August 3,

22   2010, directed the U.S. Sentencing Commission to amend the Sentencing Guidelines

1    accordingly, and those "amendments took effect on November 1, 2010, significantly reducing

2    the base offense levels for specific quantities of cocaine base." United States v. Douglas, 644

3    F.3d 39, 41 (1st Cir. 2011). The FSA amendments "reduced in certain instances the mandatory

4    minimum prison terms prescribed under prior law for violations involving cocaine base . . . by

5    increasing the drug quantity thresholds required to trigger the specific mandatory minimums."

6    Id. at 40.

7              The old ratio was 100:1 and thus the five-year mandatory minimum
8              was triggered for 5 grams of cocaine base or 500 grams of cocaine
9              powder; the ten-year minimum was for 50 grams of cocaine base
10             or 5 kilograms of powder. The new statute triggered a five-year
11             minimum for 28 grams of cocaine base (leaving powder at 500
12             grams) and a ten-year minimum for 280 grams of cocaine base
13             (leaving powder at 5 kilograms).

14   Id. 40–41 (citing 21 U.S.C. § 841(b)(1)(A)(ii)-(iii), (b)(1)(B)(ii)-(iii) (amended 2010); FSA

15   § 2(a), 124 Stat. at 2372 (amending 21 U.S.C. § 841(b)(1))).

16            The First Circuit has held that the FSA does not apply retroactively to persons whose

17   wrongful conduct occurred before August 3, 2010. United States v. Goncalves, 642 F.3d 245,

18   254–55 (1st Cir. 2011). However, the First Circuit has approved of sentencing a defendant

19   under the new, more-lenient guidelines when the defendant pleaded guilty prior to the FSA's

20   enactment, but was sentenced after the amendments of November 1, 2010. Douglas, 644 F.3d

21   at 42–43. We lack controlling precedent for Petitioner's precise predicament, since he was

22   sentenced on September 13, 2010—after the FSA became effective, but before the November

23   amendments.[1]

_____

[1]   The Supreme Court recently heard oral arguments regarding defendants whose offenses predate the
FSA but who were sentenced afterwards. Hill v. United States, 132 S. Ct. 759 (2011); Dorsey v. United States,
132 S. Ct. 759 (2011).

Civil No. 10-1696 (JAF)                                                              -7-

Unfortunately for Petitioner, however, the FSA would not help him even if the amendments did apply retroactively.  Although the plea agreement recommended a sentence of eighty-four months for the first count,[2] this court only imposed a sentence of sixty months—the statutory mandatory minimum—for that count.  The amount of crack to which Petitioner pleaded guilty would have merited the statutory mandatory minimum sentence of five years under both the old and the new amended versions of 21 U.S.C. § 841(b)(1)).

Petitioner pleaded guilty to, and was sentenced for, at least thirty-five but less than fifty grams of crack.  (Crim. No. 09-405, Docket No. 189 at 2.)  The FSA amendments "triggered a five-year minimum for 28 grams of cocaine base."  Douglas, 644 F.3d 39 at 40 (citations omitted).  Therefore, Petitioner's mandatory minimum sentence would have been the same even if he had been sentenced after the FSA amendment.  See United States v. King, No. 08-00322, 2012 U.S. App. LEXIS 3363 (9th Cir. Feb. 15, 2012) (holding that even though the FSA "sentencing guideline amendments are retroactive, they do not help King because he was sentenced based on a statutory mandatory minimum, not the sentencing guidelines"); United States v. Jones, No. 09-20053-001, 2012 U.S. App. LEXIS 2052 (7th Cir. Feb. 1, 2012) (holding that "even if the FSA applied to Jones, he would not be better off. Because he possessed more than 28 grams of crack cocaine, he still would have been bound by the statutory minimum").

───────────────

[2]  The plea agreement calculated an adjusted offense level of 26, and calculated a guideline range of seventy to eighty-seven months of imprisonment (assuming a criminal history of Category II).  (Crim. No. 09-405, Docket No. 189 at 2.)  Under the new FSA guidelines, Petitioner would have had an adjusted offense level of 24, with a corresponding guideline range of fifty-seven to seventy-one months.  But, as discussed above, this calculation does not take the mandatory minimum into account.

**C.    § 3582**

Finally, we consider Petitioner's challenge under 18 U.S.C. § 3582.[3]  Petitioner argues that his sentence was "based on" a Sentencing Guideline range specified in the plea agreement within the meaning of § 3582(c)(2) and, thus, should be reduced under Freeman v. United States, 131 S. Ct. 2685 (2011).[4]  (Docket No. 1 at 2.)  His reliance on Freeman proves inapposite because, as discussed above, he received a sentenced based not on a sentencing guideline range, but on the mandatory minimum sentence required under both the pre- and post-FSA statutory regimes.  Petitioner's plea agreement (pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure) recommended a longer term than the sentence he received, which we imposed in accordance with the statutory mandatory minimum sentence.

Thus, § 3582(c)(2) and the crack cocaine amendment to the Sentencing Guidelines cannot help Petitioner obtain a sentencing reduction because he was given "a statutory mandatory minimum sentence [and §] 3582(c)(2) 'confers no power on the district court to reduce a minimum sentence mandated by statute.'"  United States v. Ganun, 547 F.3d 46, 47 (1st Cir. 2008) (quoting United States v. Dimeo, 28 F.3d 240, 241 (1st Cir. 1994)); see also United States v. Roa-Medina, 607 F.3d 255, 261 (1st Cir. 2010) ("As the policy statement puts it, the crack amendment did not 'have the effect of lowering the defendant's applicable guideline

---

[3]    Such challenges are often brought separate from habeas petitions when a defendant "in the first instance file[s] a motion with the sentencing court pursuant to 18 U.S.C. § 3582(c)(2).  United States v. Lipscomb, 539 F.3d 32, 43 n.9 (1st Cir. 2008).

[4] As described by the Supreme Court, § 3582(c)(2) establishes a two-step inquiry. Step one requires that his sentence must have been based on a sentencing range subsequently lowered by the Sentencing Commission. Step two "instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Dillon v. United States, 130 S. Ct. 2683, 2691–92 (2010) (citations omitted).

1   range because of the operation of another guideline or statutory provision (e.g., a statutory

2   mandatory minimum term of imprisonment.)'" (quoting USSG § 1B1.10 cmt. n.1(A))).

**IV.**

**Certificate of Appealability**

    In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever we

deny § 2255 relief we must concurrently determine whether to issue a certificate of appealability

("COA").  We grant a COA only upon "a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2).  To make this showing, "[t]he petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong."  Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v.

McDaniel, 529 U.S. 473, 484 (2000)).  We see no way in which a reasonable jurist could find

our assessment of Petitioner's constitutional claims debatable or wrong.  Petitioner may request

a COA directly from the First Circuit, pursuant to Rule of Appellate Procedure 22.

**V.**

**Conclusion**

    For the foregoing reasons, we hereby **DENY** Petitioner's § 2255 motion (Docket No. 1).

Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, summary dismissal is in

order because it plainly appears from the record that Petitioner is not entitled to § 2255 relief

in this court.

    **IT IS SO ORDERED**.

    San Juan, Puerto Rico, this 24th day of April, 2012.

                                            s/José Antonio Fusté
                                            JOSE ANTONIO FUSTE
                                            U.S. District Judge